UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATHAN CAMPOS and JANET GARVEY,<br><br>Plaintiffs,<br><br>v.<br><br>BIG FISH GAMES, INC., a Washington corporation, et al.,<br><br>Defendants. | Case No. C22-1806-RSM<br><br>ORDER RE: DEFENDANTS' MOTIONS TO COMPEL ARBITRATION, DISMISS, AND STAY DISCOVERY |

## I.     INTRODUCTION

This matter comes before the Court on Defendants Big Fish Games, Inc. and Product Madness, Inc. (collectively, "Defendants")' "Motion to Compel Arbitration or, in the Alternative, to Dismiss." Dkt. #96. Plaintiffs Nathan Campos and Janet Garvey (collectively, "Plaintiffs") oppose the Motion. Dkt. #104. Defendants' request that this Court: (1) compel Plaintiff Garvey to arbitrate her claims; (2) stay Plaintiff Campos' claims pending resolution of Plaintiff Garvey's arbitration; or, in the alternative, dismiss with prejudice Plaintiffs' third cause of action related to Plaintiff Garvey's claims. Dkt. #96 at 1, 24. Defendants have also filed a "Motion to Stay Discovery as to Plaintiff Garvey's Claims Pending Ruling on Motion to Compel Arbitration or Dismiss." Dkt. #108. Plaintiff Garvey opposes the Motion. Dkt. #110. For the reasons set forth

below, the Court DENIES IN PART and GRANTS IN PART Defendants' Motion to Compel Arbitration or, in the Alternative, to Dismiss, and DENIES AS MOOT Defendants' Motion to Stay Discovery.

## II.    BACKGROUND

Plaintiffs filed their third Amended Complaint on January 11, 2024. Dkt. #92. Plaintiffs bring this putative class action alleging damages from being "deceived into making in-game purchases of deceptively marketed in-game items in the mobile application games Big Fish Casino and Jackpot Magic slots (collectively, "the Games") and lost those purchases to the Games' unlawful and unfair casino-style games of chance." *Id*. at 2. Plaintiffs allege that Defendants "deceived consumers" by "inundat[ing]" them with false sales promotions and limited time bonuses for discounted in-games goods through the use of "strikethrough pricing and statements like 'SALE!' and '5.5x' alongside countdown clocks to trick consumers into believing they were benefiting from limited-time promotions that substantially increased the value of their in-game purchases." *Id*. at 3-4. Plaintiffs allege that these "purported savings were false" because "the stricken 'original' pricing" was not the regular pricing for these goods and the special offers were not time-limited or true discounts because "these purported sales run almost perpetually and are only unavailable for trivial periods of time." *Id*. at 4. Plaintiffs raise claims under the Washington Consumer Protection Act ("WCPA") RCW Chapter 19.86, the Revised Code of Washington § 4.24.070, California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), the North Carolina Deceptive Trade Practice Law, as well as common law claims for fraud, negligent misrepresentation, and unjust enrichment. *Id*. at 22-47.

### A. The Games

The following facts are taken from Plaintiffs' third Amended Complaint, Dkt. 92.

ORDER RE: DEFENDANTS' MOTIONS
TO COMPEL, DISMISS, AND STAY DISCOVERY - 2

The Games are mobile application casino-style games developed and distributed by Defendants. Users receive a few free chips or coins upon downloading and periodically when logging into the Games. Users may purchase chips and coins through virtual stores using real money as well. Upon logging in, pop-up advertisements for "sales" on chips or coins appear. Most sales include a countdown timer showing the remaining time for that sale. Many also include "strikethrough" prices, purportedly showing what a user would normally receive for the same amount of money as opposed to the sale. An example would be a $1.99 bundle including 20,000 coins stricken through in comparison to a sale amount of 165,000 for the same price for a limited time. The sales with countdown timers purportedly show a lower price offered for a limited amount of time. Plaintiffs allege, however, that the chips and coins are "almost always" offered at higher price points than the strikethrough prices, and the countdown timer sales "exist almost perpetually and are unavailable for only trivial periods of time, if at all." Dkt. #92 at 11, 14. In order to use the Games, users must accept the Terms of Use, which include a mandatory arbitration and class waiver provision, which users "may opt out of the binding arbitration requirement by sending written notice within thirty (30) days of [their] acceptance of these Terms." Dkt. #96 at 8.

**B. Parties**

Plaintiff Campos is a citizen of California who downloaded the Games from the Apple App Store in 2022. Dkt. #92 at 5. Plaintiff Campos sent timely written notice to opt out of the dispute resolution provisions, including mandatory arbitration, choice of law, and venue provisions. *Id*. Plaintiff Garvey is a citizen of North Carolina who began playing the Games prior to 2021. *Id*. at 6. In 2020, 2021 and 2023, Plaintiff Garvey opted out of the Games' mandatory arbitration and class waiver provisions. *Id*. at 7; Dkt. #104 at 10.

Defendant Big Fish Games, Inc., is a Washington corporation with its principal place of business in Seattle, Washington. Dkt. #92 at 6. Defendant Product Madness, Inc., is a Delaware corporation with its principal place of business in London, England. *Id*. at 8. Defendant Product Madness also is registered in California, with an agent for service in the state, and its principal place of business is registered as Defendant Big Fish Games, Inc.'s address in Seattle, Washington. *Id*.

### C. *Kater* Settlement

In 2015, the *Kater* case was filed in this District, alleging that the Games were illegal gambling games and bringing user claims for violations of WCPA RCW 4.24.070 and other statutory and common law claims. Dkt. #96 at 7. As part of the approved class action settlement, class members agreed to release all claims, accrued or not, that arise out of or relate to actions relating to the Games' operations or the sale of virtual coins or chips, such as claims that the Games are illegal gambling games and that the coins or chips are "things of value." *Id*. Class members also stipulated that these virtual coins or chips are not things of value, and members were estopped from this contention. *Id*. The settlement also released claims as to Defendant Big Fish Games and its successors, assigns, and corporate affiliates. *Id*. Plaintiff Garvey was a class member in the *Kater* settlement. *Id*.; Dkt. #92 at 6.

### D. Terms of Service Opt-Out

Upon transfer of the Games' operation from Defendant Big Fish Games to Defendant Product Madness, an in-game pop-up presented to all active users which required them to accept updated Terms of Service to continue play. Dkt. #96 at 7-8. This was a mandatory pop-up screen with a button titled "AGREE" that users had to click to continue use, as well as hyperlinks to the Privacy Policy and Terms of Service. *Id*. at 8. The Terms of Service contained a mandatory arbitration clause. *Id*. Users could opt out of the arbitration requirement by sending a written

notice to Defendant Product Madness at a specified Delaware address within thirty days of acceptance of the Terms of Service. *Id*. The Terms of Service also included provisions that arbitration and litigation would be on an individual basis with no class actions or class arbitrations. *Id*. These Terms of Service are governed under Delaware law. *Id*.

According to Defendants, Plaintiff Garvey clicked "AGREE" to the new Terms of Service on December 1, 2023, but Defendants claim they never received a written notice of opting out of any of the terms. *Id*. at 8-9. Plaintiff Garvey contends that she sent a written opt-out notice to Defendant Product Madness on December 1, 2023. Dkt. #104 at 4.

### III. DISCUSSION

**A. Legal Standard**

**a. Arbitration**

"The [Federal Arbitration Act ("FAA")] provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,' and permits a party 'aggrieved by the alleged refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations and ellipses omitted). "The FAA requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal citation omitted); *Chiron*, 207 F.3d at 1130 ("[T]he Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'") (citation omitted). "The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Nguyen*, 763 F.3d at 1175 (citing *Chiron*, 207 F.3d at 1130). To determine "whether a

valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)).

Notwithstanding the language of Section 3 of the FAA, a court "may either stay the action or dismiss it outright [if] the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). However, because claims dismissed due to a valid and enforceable arbitration clause are dismissed for failure to state a claim, dismissal without prejudice is appropriate. *See, e.g.*, *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000); *Gadomski v. Wells Fargo Bank N.A.*, 281 F.Supp.3d 1015, 1021 (E.D. Cal. 2018) ("Having decided the Agreement is enforceable and that all Plaintiff's claims are subject to arbitration, the Court is within its discretion to dismiss the complaint under Rule 12(b)(6).").

**b. Dismiss**

Rule 12(b)(6) allows for dismissal of a complaint due to a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal may "be based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The complaint must "contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[,]' requiring more than "an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When considering a 12(b)(6) motion, the court takes well-pleaded factual allegations as true and views them in a light most favorable to the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 125 F.3d 658, 661 (9th Cir. 1998). The court does not have to take presented

ORDER RE: DEFENDANTS' MOTIONS
TO COMPEL, DISMISS, AND STAY DISCOVERY - 6

legal conclusions as factual allegations or accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences[.]" See *Iqbal*, 556 U.S. at 678; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Dismissal without prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Creech v. Tewalt*, 84 F.4 777, 789 (9th Cir. 2023) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

### B. Analysis

Defendants argue that Plaintiff Garvey must arbitrate her claims because she agreed to a binding arbitration clause and did not opt out of this provision. Dkt. #96 at 11. In the alternative, Defendant argues that Plaintiff's Garvey's third cause of action, seeking recovery of money lost at gambling in illegal gambling under RCW 4.24.070, should be dismissed because Plaintiff Garvey is barred by her prior settlement agreement in *Kater*. *Id*. at 21. The Court addresses these arguments in turn below.

#### a. Compel Arbitration

Defendants argue that the Court should compel Plaintiff Garvey to arbitrate her claims because she agreed to the Terms of Use on December 1, 2023, including an arbitration agreement, and did not opt out of this provision within thirty days of agreeing to the new terms. *Id*. at 11. Plaintiff Garvey contends that she mailed a letter informing Defendants that she opted out of the arbitration agreement on December 1, 2023. Dkts. #104 at 7, #105. Defendants state that they did not receive Plaintiff Garvey's opt-out letter and argue that Plaintiff's declaration that she sent her opt-out letter "is a self-serving declaration" that "does not suffice to satisfy the mailbox rule[,]" and she fails to offer any other corroborating evidence. Dkt. #107 at 102.

"Under the common-law mailbox rule, proof of proper mailing—including by testimonial or circumstantial evidence—gives rise to a rebuttable presumption that the document was

physically delivered to the addressee in the time such a mailing would ordinarily take to arrive." Baldwin v. United States, 921 F.3d 836, 840 (9th Cir. 2019).

Along with Plaintiff Garvey's statement and photo documentation of her letter (*see* Dkt. #105), Plaintiff Garvey further contends that she opted out of Defendants' arbitration agreements several times (April 2020, 2021, and 2023), making the December 2023 letter her fourth opt-out notice and clear evidence that Plaintiff Garvey consistently exempted herself from any arbitration agreements. Dkt. #104 at 10. Ms. Garvey also points out that on September 28, 2023, her counsel informed Defendants that she intended to pursue claims against Defendants regarding in-game purchases by joining Plaintiff Campos' case. *Id*. at 11. Therefore, "Garvey could not have been more clear and consistent in her intent to not be bound to mandatory arbitration with respect to her disputes over the Games." *Id*.

The Court agrees with Plaintiff Garvey. Defendants are correct that it is Plaintiff "Garvey's burden to prove that she opted out of the binding arbitration agreement." Dkt. #107 at 1 (citing *Bennett v. T-Mobile USA, Inc.*, 2024 WL 229580, at *12 (W.D. Wash. Jan. 22, 2024)). The Court finds that Plaintiff's three prior opt-out notices and Plaintiff's notice from counsel in September 2023 together provide sufficient evidence to satisfy the mailbox rule and Plaintiff's burden to show that she opted out of the arbitration agreement. *See Olson v. The Bon, Inc.*, 144 Wn. App. 627, 634 (2008).

Because the Court does not grant Defendant's Motion to Compel Plaintiff to arbitrate her claims, the Court also denies Defendant's request that Plaintiff Campos' claims should be stayed pending Plaintiff Garvey's arbitration as moot. Dkt. #104 at 19-20.

b. Dismiss Third Cause of Action

Defendants move to dismiss Plaintiff Garvey's third cause of action and argue that this claim is barred under Plaintiff Garvey's settlement agreement in *Kater*. *Id*. at 21. Plaintiff

Garvey argues that she is not estopped from pursuing this claim because the injury occurred after the settlement and because Defendants continue to violate the settlement agreement. Dkt. #107 at 18-20.

The Court finds that, even viewing all reasonable inferences in a favorable light to Plaintiff Garvey, this claim should be dismissed. Plaintiff Garvey's claims under Washington's RCW 4.24.070 allege that Defendants' "online gambling games are illegal gambling games because they are online games at which players wager things of value (the chips/coins) and by an element of chance . . . are able to obtain additional entertainment and extend gameplay[.]" Dkt. #92 at 30-32. However, as part of the settlement agreement in *Kater*, Plaintiff Garvey agreed to release any claims, known or unknown, claimed or unclaimed, accrued or unaccrued, that the Games are illegal gambling games and that the virtual chips are "things of value" under Washington or any other law. Dkt. #104 at 21-22. The settlement specifically included the stipulation that the virtual chips "are gameplay enhancements, not 'things of value,' and "all Settlement Class members are estopped from contending that virtual chips in the Applications are 'things of value[.]'" Dkts. #97, #104 at 21-22. According to Plaintiffs' third Amended Complaint, Plaintiff Garvey brings claims asserting the exact issues and facts as those estopped by the *Kater* settlement. *See* Dkt. #92 at 30-32. Plaintiff Garvey attempts to argue that Defendants do not meet the requirements of the settlement because they continue to prevent users from playing the Games without needing to wait to purchase additional chips or waiting until they otherwise would receive free additional chips in ordinary due course. Dkts. #94 at 15-16, #107 at 18-20. But Plaintiffs' Amended Complaint is devoid of sufficient detail for the Court to determine how Plaintiff Garvey's current claim is different from those in the *Kater* settlement or how Defendants' current game mechanics violate the settlement's terms that users do not have to wait for free chips in the ordinary course of events or purchase new chips to continue play.

Viewing all reasonable inferences in Plaintiff's favor, the Court agrees with Defendants that this claim should be dismissed. However, Plaintiffs shall have leave to amend their Complaint to potentially cure these errors.

**c. Pending Motion to Stay Discovery**

Defendants have also filed a Motion to Stay Discovery as to Plaintiff Garvey's claims pending resolution of Defendant's Motion to Compel Arbitration. Dkt. #108. Because the Court denies Defendants' Motion to Compel Arbitration, the Court denies Defendants' Motion to Stay Discovery pending arbitration as now moot.

## IV.  CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that:

(1) Defendants' Motion to Compel Arbitration or, in the Alternative, to Dismiss, Dkt. #96, is DENIED IN PART and GRANTED IN PART. Defendants' Motion to Compel Arbitration is DENIED. Defendants' Motion to Dismiss Plaintiffs' third cause of action is GRANTED without prejudice.

(2) Defendants' Motion to Stay Discovery as to Plaintiff Garvey's Claims Pending Ruling on Motion to Compel Arbitration or Dismiss, Dkt. #108, is DENIED AS MOOT.

DATED this 3rd day of June, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE