UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATHAN CAMPOS and JANET GARVEY,<br><br>  Plaintiffs,<br><br>  v.<br><br>BIG FISH GAMES, INC., a Washington corporation; et al.,<br><br>  Defendants. | Case No. C22-1806-RSM<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND APPOINTMENT OF INTERIM CLASS COUNSEL |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs Nathan Campos and Janet Garvey (collectively, "Plaintiffs")' Motion for Temporary Restraining Order ("TRO") and Appointment of Interim Class Counsel against Defendants Big Fish Games, Inc. ("BFG") and Product Madness, Inc. ("PM") (collectively, "Defendants"). Dkt. #119. Defendants have requested oral argument. The Court has determined it can rule on the Motion without the need for oral argument. For the following reasons, the Court DENIES Plaintiffs' Motion.

ORDER - 1

## II. BACKGROUND

The facts of this case are well-known. *See* Dkt. #112. Plaintiffs' TRO Motion seeks emergency relief related to Defendants' updated pop-up window displayed in the gaming application. Dkt. #119. This pop-up identifies Defendants' new Terms of Service ("TOS"), which were updated on December 1, 2023, and again on June 5, 2024. *Id*. at 1. The updated TOS added Defendant PM to the Terms of Service, after Plaintiffs amended their complaint to add PM as a defendant to this lawsuit. *Id*. Defendants attempted to enforce the updated December 1, 2023, arbitration agreement against Plaintiff Garvey, which this Court ultimately denied on June 3, 2024, due to Plaintiff Garvey's history of opting-out of the arbitration provision. *See* gen. Dkt. #112. Defendants then updated their TOS again on June 5, 2024. Dkt. #112 at 1. Defendants' updated TOS continued to include the arbitration agreement and opt-out instructions, as well as "language that the arbitration provisions apply to all past claims and language that purports to negate the effect of prior opt-out notices." *Id*. at 1-2. The TOS do not include any information regarding this lawsuit. *Id*. at 2.

After the update on June 5, 2024, Plaintiffs' counsel communicated to Defendants' counsel that the updated TOS "were improper class communications" and attempted to get Defendants' agreement that the updated TOS did not apply to putative class members. *Id*. at 5. Defendants apparently refused, agreeing to only not enforce the updated TOS against the named Plaintiffs and others represented by counsel. *Id*. Plaintiffs then filed this TRO Motion, noted as a 28-day motion, requesting that the Court assert control over communications by Defendants with putative class members pursuant to Fed. R. Civ. P. 23. *Id*. at 2. Specifically, Plaintiffs request this Court require Defendants to: (1) restore the dispute resolution provisions of the TOS prior to the December 1, 2023, update; (2) require any new TOS updates include notice of this

ORDER - 2

lawsuit and the effect the updates may have on class members' rights; and (3) appoint Plaintiffs' counsel, The Ryan Law Group, as interim class counsel. *Id*. at 15.

### III.   DISCUSSION

**A. Legal Standard**

**a. TRO**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. V. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

As an alternative to this test, a preliminary injunction is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply" in the moving party's favor, thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). However, the "serious questions" approach supports a court's entry of a TRO only so long as the moving party also shows that there is a likelihood of irreparable harm and that the injunction is in the public interest. *Id*. at 1135. The moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22.

//

### b. Rule 23(d)

Under Fed. R. Civ. P. 23(d), courts are afforded "considerable discretion" to regulate defendant communications with class members in order to prevent abuse. *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1061 (W.D. Wash. 2019) (quoting *Jimenez v. Menzies Aviation Inc.*, 2015 WL 4914727, at *5 (N.D. Cal. Aug. 17, 2015)). "Because class actions 'present opportunities for abuse, [] a district court has both a duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties.'" *Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989)) (internal quotations omitted). However, any order regulating communications between parties and putative class members must "be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* (internal quotations omitted).

When considering whether a defendant's effort to obtain an arbitration provision from putative class members interferes with their rights under Rule 23(d), courts analyze the timing of the communication, its potential to mislead putative class members, and the risk that putative class members may forfeit their rights "without really knowing what they are." *Id.*; see also *Jimenez*, 2015 WL 4914727, at *6 (finding new arbitration policy invalid as applied to putative class members who were not informed of the pending lawsuit). In contrast, the communication with putative class members is deemed proper if it "does so in a manner that discloses information about this suit and affords an opt-out." *McKee v. Audible, Inc.*, 2018 WL 2422585, at *8-9 (C.D. Cal. Apr. 6, 2018).

### c. Interim Class Counsel

A district court "may designate interim counsel on behalf of a putative class before determining whether to certify the action as a class actions." Fed. R. Civ. P. 23(g)(3). "The

commentary to this rule further notes that a court is authorized to designate interim counsel 'if *necessary* to protect the interests of the putative class.'" *Pecznick v. Amazon.com, Inc.*, 2022 WL 448123, at *4 (W.D. Wash. Sept. 27, 2022) (emphasis added) (quoting Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment). Appointing interim class counsel is "particularly suited to situations" where multiple lawyers are competing for class counsel appointment. Id. (citing Manual for Complex Litig. (Fourth) § 21.11 (2021)).

**B. Analysis**

The Court is primarily concerned with the showing of irreparable harm. Irreparable harm is the primary reason for filing a TRO motion as opposed to obtaining relief in the normal course of litigation. Plaintiffs devote most of their time to describing how Defendants' updated TOS are "draconian" and misleading because Defendants attempt to force putative class members to opt-out of this litigation through an arbitration agreement after litigation began. *See gen*. Dkt. #116. However, as Defendants point out, Defendants' arbitration agreement and opt-out procedure have been included in the various games' TOS for several iterations. *See* Dkt. #127 at 17 ("Plaintiffs have been aware of these pop-ups for nearly two years"). Plaintiff Garvey's numerous opt-outs of Defendants' arbitration provision demonstrate this. *See* Dkt. #112 (denying Defendants' Motion to Compel Arbitration due to Plaintiff's demonstrated history of opting-out of such provision). Unlike the cases Plaintiffs point to, Defendants' terms in the TOS were not added only after this lawsuit began, nor expressly aimed at this lawsuit, and Defendants' TOS includes an opt-out, which Plaintiffs have used. *See Kater*, 423 F. Supp. 3d (granting TRO where terms were updated to expressly exclude rights to pending lawsuit); *Jimenez*, 2015 WL 4914727 (denying arbitration where arbitration term was created and required after class action litigation began); *Balasanyan*, 2012 WL 760566 (arbitration denied where employer attempted

to change the arbitration term after litigation onset with required documentation and without an opt-out).

Moreover, any harm caused by the updated December 2023 TOS or June 2024 TOS to putative class members has, if at all, already occurred. Plaintiffs assert that "even if the Court orders corrective notice, that will not completely undo the fact that putative class members have already received dangerously wrong information. That is irreparable harm." Dkt. #116 at 12. But Plaintiffs fail to assert how what potentially happened from these past updates establishes that now, months after these terms were updated, there is an immediate risk of irreparable harm unless the Court steps in beyond the normal process of litigation. If class certification prevails, the Court will be fully able to notify class members of this case and their potential rights, including whether and which TOS applies. Later process in this litigation provides ample time and opportunity to resolve these questions without risk of immediate, irreparable harm requiring a TRO.

Accordingly, the Court finds that Plaintiffs have failed to show irreparable harm, and the Court need not examine the other factors above to find that this Motion can be denied. Furthermore, because the Court finds no risk of irreparable harm pending class certification and the case does not involve multiple attorneys vying for the position, the Court finds it unnecessary to appoint interim class counsel.

## IV.   CONCLUSION

Having considered the briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff's Motion for Temporary Restraining Order and Appointment of Interim Class Counsel, Dkt. #119, is DENIED.

//

//

DATED this 23rd day of August, 2024.

*[signature]*

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 7