# Exhibit A

FILED
SUPREME COURT
STATE OF WASHINGTON
4/23/2026
BY SARAH R. PENDLETON
CLERK

# THE SUPREME COURT OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT<br><br>SHAWNNA MONTES, on behalf of herself and all others similarly situated,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>SPARC GROUP LLC,<br><br>Defendant-Appellee. | ) )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CERTIFICATE OF FINALITY**<br><br>Supreme Court No.<br>104162-4<br><br>U.S. Court of Appeals for the Ninth Circuit No. 23-35496 |

**THE STATE OF WASHINGTON TO:** U.S. Court of Appeals for the Ninth Circuit

THIS IS TO CERTIFY that the Supreme Court of the State of Washington addressed the question certified by the U.S. Court of Appeals for the Ninth Circuit in the opinion filed in this case on April 2, 2026. The opinion was final on April 22, 2026. A true copy of the opinion is attached.



RECEIVED
U.S. COURT OF APPEALS

APR 30 2026

FILED

Page 2
No. 104162-4
CERTIFICATE OF FINALITY



IN TESTIMONY WHEREOF, I have hereunto
set my hand and affixed the seal of this Court
at Olympia, Washington on April 23, 2026.

SARAH R. PENDLETON
Clerk of the Supreme Court
State of Washington

cc: Hon. Molly C. Dwyer, Clerk
Meegan Brooks
Stephanie Sheridan
Callie Anne Castillo
Che Z. Corrington
Daniel Morley Kekoa Hattis
Paul Karl Lukacs
Stephen P. DeNittis
Reporter of Decisions

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 2, 2026

*Signature*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 2, 2026

*Signature*

SARAH R. PENDLETON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT IN | No. 104162-4 |
| SHAWNNA MONTES, on behalf of herself and all others similarly situated, | EN BANC |
| Plaintiff - Appellant, | Filed: April 2, 2026 |
| v. | |
| SPARC GROUP LLC, | |
| Defendant - Appellee. | |

GORDON McCLOUD, J.—"Any person who is injured in his or her business or property" may sue to enforce the Washington Consumer Protection Act (CPA). RCW 19.86.090. Only economic losses count as injuries to "business or property" under the CPA—noneconomic losses, such as "personal injury, 'mental distress, embarrassment, and inconvenience,'" do not count. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431, 334 P.3d 529 (2014) (quoting *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 204 P.3d 885 (2009)).

*Montes v. SPARC Grp. LLC*, No. 1041624

The issue in this case is whether a consumer suffers an economic injury in "her business or property" when she purchases—and obtains—the very product she sought to obtain but does so because the seller misrepresented the product's price history. The question arises in this case because consumer Shawnna Montes alleges that she purchased $6.00 leggings at their advertised $6.00 price; she obtained leggings that conformed in all material respects to $6.00 leggings; she made the purchase because the seller advertised that the leggings were on sale for $6.00 from a regular price of $12.50; but in fact the leggings had rarely sold for $12.50.

Without more, the answer to this question is no. A consumer does not suffer an injury in "her business or property" when she purchases—and obtains and keeps—the fungible product she sought to obtain but does so because the seller misrepresented the product's price history.

A consumer could allege economic loss if, for example, the product she received was objectively different from or less valuable than what was advertised. *Williams v. Lifestyle Lift Holding, Inc.*, 175 Wn. App. 62, 302 P.3d 523 (2013). But Montes made no such allegation. She did not allege that the leggings she received differed in any material, objective way from the leggings advertised. She did not allege that the leggings were worth less than the $6 she paid for them. She did not allege that she tried to return them for a refund after learning the truth about their

2

*Montes v. SPARC Grp. LLC*, No. 1041624

price history. Instead, Montes received and retained the leggings she wanted at the price she agreed to pay.

Her allegations do show disappointed expectations. But disappointed expectations do not support a CPA claim. At least as to fungible consumer goods like leggings, the fact "that plaintiff may have been manipulated into purchasing the items because she believed she was getting a bargain does not necessarily mean she suffered economic harm." *Mulder v. Kohl's Dep't Stores, Inc.*, No 15-11377-FDS, 2016 WL 393215, at *6 (D. Mass. Feb. 1, 2016) (court order), *aff'd*, 865 F.3d 17 (1st Cir. 2017).

## FACTS AND PROCEDURAL HISTORY

I.     Plaintiff purchases falsely discounted product and files CPA lawsuit

Aéropostale is a nationwide clothing retailer that sells its exclusive line of branded clothing online and in brick-and-mortar stores. Excerpts of Rec. (ER) at 15-52 (complaint).[1] Plaintiff Montes was a regular Aéropostale customer. *Id.* at 42, para. 84. On January 9, 2021, she visited Aéropostale's website to shop and viewed the product page for "Seriously Soft Heathered High-Rise Leggings." The price of the leggings was listed as $6.00. The struck-out price "$12.50" appeared directly to the

---

[1] The facts in this section are taken from the complaint. Because the federal court certified the question in this case in connection with a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, we accept all facts alleged in the complaint as true. *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 830, 355 P.3d 1100 (2015).

*Montes v. SPARC Grp. LLC*, No. 1041624

right of that price. Based on these representations, Montes alleges that she reasonably believed that the leggings were normally offered and sold for $12.50 and that the "sale" price of $6.00 "represented a special bargain." *Id.* at 43, para. 88. She alleges that she also reasonably believed that the leggings "were thereby worth and had a value of $12.50." *Id.* Montes purchased the leggings based on these representations. *Id.* at 43-44, para. 89. She drove to the local Aéropostale store to pick them up. *Id.* at 44-45, para. 93.

On September 15, 2022, Montes filed a putative class action complaint in the Eastern District of Washington on behalf of herself and the members of the following proposed class:

> All citizens of the State of Washington who, since September 16, 2016, purchased from the Aéropostale website one or more products which was advertised with a discount or "free" offer.

*Id.* at 45, para. 98 (boldface omitted).[2] She alleged that Aéropostale violated the CPA by engaging in a widespread "false discounting" scheme in which Aéropostale "advertised perpetual or near perpetual website-wide and store-wide 'sales' and percentage-off discounts—typically 50% to 70% off—from Aéropostale's self-created list prices for its products in order to trick its customers and the general public into thinking that its products were 'on sale.'" *Id.* at 16, para. 3. In fact, based

---

[2] Montes does not allege that she purchased any items advertised with a "free" offer.

4

*Montes v. SPARC Grp. LLC*, No. 1041624

on data collected during a yearslong investigation by plaintiff's counsel, "Aéropostale's advertised former prices (i.e., the strike-through prices which Aéropostale labeled on its website as the **"REGULAR PRICE"**) to which the discounts were applied were false and inflated." *Id.* at 40, para. 71.[3]

In conformity with that scheme and unbeknownst to Montes when she bought the leggings, "Aéropostale had almost never offered the Leggings at the advertised regular price of $12.50." *Id.* at 44, para. 90. Instead, for the six-month period immediately prior to the date Montes purchased the leggings, "Aéropostale offered the Leggings on its website at the supposed regular price of $12.50 for only a single day, on January 6, 2021." *Id.* para. 91.

Montes alleges that this "false discounting scheme" constitutes an unfair and deceptive business practice and that it caused injury to her business or property in three distinct ways. *Id.* at 49, para. 113.

---

[3] Montes alleges that "[t]he percentage-off and other discounts were *always* false," yet she also acknowledges that at least some products (including the leggings Montes purchased) were occasionally offered for sale at the reference price. ER at 40, para. 71. Montes implicitly asks us to ignore the fact that products were occasionally offered for sale at the reference price by further alleging that when Aéropostale offered a product at the list price, "it did so in bad faith, solely for the purpose of 'establishing' its list price to attempt to exculpate itself from legal liability for its illegal pricing scheme. It was Aéropostale's intent to sell few if any products at list price, and in fact Aéropostale sold no, or practically no, products at list price." *Id.* para. 72.

*Montes v. SPARC Grp. LLC*, No. 1041624

First, Montes alleges that she and the class suffered injury because "they would not have purchased the items at the prices they paid had they known the items had not been regularly offered at the higher list price" (the "purchase price" theory). *Id.* para. 114. Second, Montes makes the somewhat duplicative allegation that she and the class suffered injury because they "did not enjoy the actual discounts Aéropostale represented and promised them." *Id.* Instead, "the items did not normally sell for, and were not actually worth, the fictitious and invented 'regular price' that Aéropostale listed on its website." *Id.* Montes refers to this as the "benefit of the bargain" theory.

Third, Montes alleges that she and the class suffered injury because the deceptive pricing scheme inflated demand, which in turn inflated prices: "they paid a price premium due to illegitimately inflated demand resulting from Aéropostale's deceptive pricing scheme." *Id.* She alleges that "[b]ut for the false advertising scheme, Aéropostale would have had to charge less money for its products in order to enjoy the same level of demand for its products." *Id.*

Montes sought actual and treble damages in an amount to be determined at trial, along with attorney fees and costs. *Id.* at 50. She did not seek injunctive relief. *Id.*

6

*Montes v. SPARC Grp. LLC*, No. 1041624

II.     Proceedings in federal court

Aéropostale moved to dismiss under Fed. R. Civ. P. 12(b)(6). For purposes of the motion to dismiss, Aéropostale acknowledged that the court could assume that the complaint sufficiently alleged the deceptive acts and causation elements of a CPA claim and that "injury is the sole issue before the Court." *Id.* at 9 (order).

The district court granted Aéropostale's motion and dismissed the complaint with prejudice. *Id.* at 4-11 (order). The court stated, "Washington cases that find injury in false advertising are for goods and services that were different and/or worth less than what was advertised." *Id.* at 8-9 (citing *Williams*, 175 Wn. App. 62). According to the district court, "while Plaintiff alleges her money was diminished to the extent that she paid $6 for the leggings, Plaintiff only alleges that the leggings were not worth the listing price, but she does not allege that the leggings were not worth the price she paid." *Id.* at 9 (citing complaint, para. 94). Because Montes did not claim that she "did not receive the value that she paid for," the district court concluded that Montes failed to allege an injury. *Id.* at 9-10.

Montes appealed. The Ninth Circuit Court of Appeals determined that Washington case law was not clear about whether Montes alleged an injury to "business or property" as required to state a CPA claim. Ord. Certifying Question to Wash. Sup. Ct. at 3 (May 9, 2025). The court certified to us the following question:

7

*Montes v. SPARC Grp. LLC*, No. 1041624

> When a seller advertises a product's price, coupled with a misrepresentation about the product's discounted price, comparative price, or price history, does a consumer who purchases the product because of the misrepresentation suffer an 'injur[y] in his or her business or property' under Wash. Rev. Code §§ 19.86.020 and 19.86.090 if the consumer pays the advertised price?

*Id.* at 5 (alteration in original). In a footnote to the certified question, the Ninth Circuit summarized each of Montes' three theories of injury so this court could "discuss the viability of these theories under Washington law in the false discounting context to the extent it sees fit." *Id.* at 5 n.2.

We accepted review.[4]

### STANDARD OF REVIEW

"Certified questions from federal court are questions of law that we review de novo." *Carlsen v. Glob. Client Sols., LLC*, 171 Wn.2d 486, 493, 256 P.3d 321 (2011). We consider the certified question "not in the abstract but based on the certified record provided by the federal court." *Id.*; *see also* RCW 2.60.030(2).

The certified question in this case asks us to interpret a statute: the CPA. Our objective in statutory interpretation is to "ascertain and carry out the Legislature's

---

[4] Ord. (June 5, 2025). We accepted amicus briefs supporting plaintiff's position from the Washington attorney general and the National Association of Consumer Advocates. We accepted an amici brief supporting defendant's position from National Retail Federation, U.S. Chamber of Commerce, Retail Litigation Center Inc., and Washington Retail Association.

*Montes v. SPARC Grp. LLC*, No. 1041624

intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). We consider a statute's text, context, related provisions, amendments to the provision, and the statutory scheme as a whole to discern the statute's plain meaning and the legislature's intent. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015) (citing *Campbell & Gwinn*, 146 Wn.2d at 9-10).

### ANALYSIS

I. The CPA's "injury" to "business or property" requirement means that a consumer must allege an objective economic loss, not subjective disappointment

The CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. When first enacted in 1961, the CPA permitted suit only by the attorney general. In 1970, the legislature "amended the CPA to provide for a private right of action whereby individual citizens would be encouraged to bring suit to enforce the CPA." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986).

The CPA's private citizen suit provision permits "[a]ny person who is injured in his or her business or property" by a violation of the act to bring a civil suit for injunctive relief, actual damages, treble damages, and attorney fees and costs. RCW

9

*Montes v. SPARC Grp. LLC*, No. 1041624

19.86.090. To prevail in a private CPA claim, the plaintiff must prove five "distinct"[5] elements: (1) an unfair or deceptive act or practice (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) a causal link between the unfair or deceptive act and the injury. *Hangman Ridge*, 105 Wn.2d at 780. By contrast, the attorney general "is not required to prove causation or injury" when it prosecutes a CPA case. *State v. Mandatory Poster Agency, Inc.*, 199 Wn. App. 506, 518, 398 P.3d 1271 (2017); RCW 19.86.080.

The purpose of the CPA is to "complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920. The legislature directed that when interpreting the CPA, courts should look to "final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters" for guidance. *Id.* The legislature also directed that the CPA "shall be liberally construed that its beneficial purposes may be served." *Id.*

Although we interpret the CPA liberally, we are, of course, still bound by the plain language of the statute. The legislature provided that only a person "injured *in*

---

[5] Some of these elements do, of course, overlap, as we have recognized. *E.g.*, *Panag*, 166 Wn.2d at 38 (while the five CPA requirements do not explicitly include standing, standing is subsumed within both the public interest impact and the injury requirements).

*Montes v. SPARC Grp. LLC*, No. 1041624

*his or her business or property*" can bring a private CPA claim. RCW 19.86.090 (emphasis added). The term "business or property" means injuries that are economic in nature. *Ambach v. French*, 167 Wn.2d 167, 172, 216 P.3d 405 (2009) (citing *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 318, 858 P.2d 1054 (1993)). Accordingly, the CPA excludes noneconomic injuries like "personal injury, 'mental distress, embarrassment, and inconvenience.'" *Frias*, 181 Wn.2d at 431 (quoting *Panag*, 166 Wn.2d at 57).

To be sure, an injury "need not be great" to be cognizable. *Hangman Ridge*, 105 Wn.2d at 792. Injury to business or property may be minimal, difficult to precisely quantify, or even temporary. *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990) (temporary wrongful loss of title is an injury to property); *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740, 733 P.2d 208 (1987) (loss of business goodwill is an injury to business or property). But the injury must be an economic loss. *Ambach*, 167 Wn.2d at 173.

II.     Without more, a plaintiff who alleges that she purchased a fungible consumer product at its advertised price because of a misrepresentation about the product's discounted price, comparative price, or price history, has not alleged that she suffered a cognizable injury to her business or property

Montes alleges three legal theories to support her claim that she suffered an injury to business or property: that she was wrongfully induced to make the purchase but she got what she paid for, that she was wrongfully induced to make the purchase

11

*Montes v. SPARC Grp. LLC*, No. 1041624

but she got what she paid for except for the satisfaction of knowing that she had scored a bargain, and the somewhat contradictory legal theory that the price she paid was artificially inflated by the wrongful inducement scheme. *See supra* at 5.

As a preliminary matter, this certified question comes to us following a Fed. R. Civ. P. 12(b)(6) motion to dismiss on the pleadings—so we accept the complaint's factual allegations as true. *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 830, 355 P.3d 1100 (2015); *Cunningham v. Cornell Univ.*, 604 U.S. 693, 697 n.2, 145 S. Ct. 1020, 221 L. Ed. 2d 591 (2025).

But we do not accept the complaint's legal theories as true—indeed, we test the sufficiency of the legal theories against the presumptively true factual allegations on which they are supposed to rest. *Trujillo*, 183 Wn.2d at 830 (quoting *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 963, 331 P.3d 29 (2014)).

Montes's basic *factual* allegation is that Aéropostale wrongfully induced her to purchase leggings for $6.00 by misrepresenting that they typically sold for $12.50. This allegation does not support any of her legal theories of injury. ER at 49, para. 113.

Let's start with Montes's first two legal theories of injury, that is, that she got what she paid for (a fungible pair of leggings that conformed in every way except price history to what she paid for) but was injured nonetheless because she would

12

*Montes v. SPARC Grp. LLC*, No. 1041624

not have paid at all except for the false advertising scheme. In a retail transaction, the consumer gives the seller money and, in exchange, receives a product or service. Certainly, the consumer's money is "diminished" when they hand it over. *Mason*, 114 Wn.2d at 854. But in return for their money, the consumer receives something of value. *See Bezdek v. Vibram USA Inc.*, No. 12-10513-DPW, 2013 WL 639145, at *5 (D. Mass. Feb. 20, 2013) (court order) (rejecting induced-purchase injury theory because, while plaintiff "alleges she spent money on shoes she otherwise might not have purchased[,] . . . she also received something of value"). Without more, the mere fact of a retail transaction does not imply economic loss. Appellee SPARC Grp. LLC's Answering Br. at 21.

Of course, it is possible for a retail transaction to cause actual economic loss. But that occurs when the consumer receives a product or service that is objectively different from or less valuable than the product she thought she was buying. For example, in *Williams*, the court held that the plaintiff alleged a CPA injury to business or property where defendants marketed a plastic surgery procedure as "'minimally invasive and not a "traditional" facelift,'" but then performed a surgery on the plaintiff that was in reality an invasive, "traditional cosmetic surgery procedure" that caused the precise side effects that the advertisements said the procedure would avoid. 175 Wn. App. at 72.

*Montes v. SPARC Grp. LLC*, No. 1041624

Montes tries to fall within the scope of a *Williams*-type injury by alleging that the leggings' falsified price history made those leggings materially different from and less valuable than the leggings she wanted. But that is a legal conclusion, not a factual allegation—so we need not accept it as true. Instead, we must test whether that legal theory is viable.

It is not. First, Montes does not claim that the leggings were worth less than the $6 she paid. ER at 13 (Montes's opposition to motion to dismiss) (acknowledging that the leggings "that Ms. Montes received had an actual value of between $5.00 and $6.00—the price range Aéropostale regularly offered them for sale" (citing complaint, para. 94)).[6] And she does not claim that the leggings she received differ in any objective way (whether in quality, origin, composition, usefulness, or any other metric) from the leggings she saw advertised. In other words, Aéropostale's

---

[6] At oral argument, Montes contended that her complaint alleged that the leggings were not worth $6 as part of her price premium theory. But we do not read her complaint that way. Instead, the complaint alleges:

> Plaintiff and the Class were also harmed because they paid a price premium due to illegitimately inflated demand resulting from Aéropostale's deceptive pricing scheme. But for the false advertising scheme, Aéropostale *would have had to charge less money for its products in order to enjoy the same level of demand* for its products.

ER at 49, para. 114 (emphasis added). But an allegation that under different, hypothetical conditions the seller would have had to charge less for the same product to enjoy the same level of demand is distinct from an allegation that at the time Montes bought the leggings, they were not worth $6.

14

*Montes v. SPARC Grp. LLC*, No. 1041624

alleged misrepresentation did not relate to any objective quality of the leggings. Instead, the misrepresentation related only to the price history of the product, which Montes alleges was a claim about the "value" of the product. But a seller's abstract claim about value does not create an objective difference between two otherwise identical fungible items. After all, as we have previously recognized, "the market determines the fair market value." *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 180 n.5, 157 P.3d 847 (2007).

Instead, Montes' claimed injury is more accurately characterized as dashed expectations. And expectations do not count as "business or property." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008); *see also* Br. of Amici Nat'l Retail Fed'n et al. at 10-11 (citing federal civil RICO cases in accord with this conclusion).[7]

This point is illustrated in the New Jersey Supreme Court's decision in *Robey v. SPARC Group LLC*, which is a particularly helpful example because the

---

[7] The Racketeer Influenced and Corrupt Organizations Act (RICO) (like the CPA) permits civil suits by "[a]ny person injured in his business or property by reason of a violation of [RICO]." 18 U.S.C. § 1964(c). RICO's "injured in his business or property" language came from section 4 of the Clayton Act, 15 U.S.C. § 15(a), just like the CPA's language. Julian C. Dewell & D. Wayne Gittinger, *Antitrust: The Washington Antitrust Laws*, 36 WASH. L. REV. & ST. B. J. 239, 251-55 (1961). We find federal cases interpreting RICO particularly persuasive because of RCW 19.86.920's directive to interpret the CPA to consider "the various federal statutes dealing with the same or similar matters."

*Montes v. SPARC Grp. LLC*, No. 1041624

allegations (as well as the defendant and both parties' counsel) were identical to those in this case. 256 N.J. 541, 311 A.3d 463 (2024). In that case, plaintiffs alleged that Aéropostale falsely advertised that clothing items were on sale and that Aéropostale's misrepresentations caused them to purchase those items. Plaintiffs sued under New Jersey's Consumer Fraud Act (CFA), which requires a plaintiff to prove that an unlawful trade practice caused "any ascertainable loss of moneys or property." *Id.* at 555 (quoting N.J. STAT. ANN. 56:8-19).

The New Jersey Supreme Court held that even though Aéropostale's alleged practices violated the state's CFA, even though those practices violated a specific state regulation barring false discount advertising, and even though New Jersey consumer protection law recognizes the purchase price and benefit of the bargain theories of loss, plaintiffs failed to establish that the violation caused an ascertainable loss under either of those theories. Plaintiffs failed to allege that they suffered economic loss under a purchase price theory (like Montes's first theory of injury) because they did not allege that the products were worthless or unsuitable for their intended use or that it would require additional money to make them usable for their intended purpose. Further, "[a]lthough plaintiffs allege that they never would have purchased the items [but for the deceptive advertising], plaintiffs do not claim that they attempted to return the items or that Aéropostale refused to accept such a return." *Id.* at 560. As to the plaintiffs' benefit of the bargain theory (like Montes's

16

*Montes v. SPARC Grp. LLC*, No. 1041624

second theory of injury), the New Jersey court determined the plaintiffs had not established loss under that theory because they "do not allege that the items purchased were materially different from what was promised—wearable pants, t-shirts, and a sweatshirt, as advertised. Nor have they alleged any dissatisfaction with or defects in the items purchased." *Id.*

We find *Robey*'s reasoning persuasive and in accord with Washington law. *E.g.*, *Williams*, 175 Wn. App. 62; *Mason*, 114 Wn.2d at 854.

In fact, we faced a similar issue in *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn.2d 310, 320, 472 P.3d 990 (2020). Like in this case, the consumer alleged that he purchased a product (there, a Toyota Tacoma truck) based on the manufacturer's misrepresentation (there, that the truck had an outside temperature display on the rearview mirror) and that the manufacturer's misrepresentation violated the CPA. But in that case, as in this one, the misrepresentation did not change the value of the truck in any material, objective way. The trial court acknowledged that the consumer had alleged, and in that case proved, a false and deceptive scheme that had the capacity to deceive the public. But the trial court nevertheless concluded that the consumer failed to allege a cognizable CPA injury to business or property because the misrepresentation had no economic impact and did not cause him any injury.

17

*Montes v. SPARC Grp. LLC*, No. 1041624

We affirmed. We specifically upheld the trial court's finding that "Young did not prove Toyota's acts caused him injury." *Id*. While we focused on the causation element of a CPA claim, our discussion in that case also implicated the overlapping injury element (the element at issue here). And our discussion in that case makes clear that a consumer who identifies a false and deceptive advertising scheme about a matter that has no impact on the economic value of the fungible consumer good fails to establish that the deceptive "acts caused [the consumer] injury." *Id*.

Most courts interpreting state consumer protection laws similar to the CPA agree. *See* Appellee SPARC Grp. LLC's Answering Br. at 26-33 (collecting cases under New Jersey, New York, Massachusetts, Illinois, Missouri, and Nevada consumer protection laws rejecting purchase price and/or benefit of the bargain theories of injury in comparable situations).

Simply put, disappointment is not a cognizable CPA injury. *Frias*, 181 Wn.2d at 431. Absent an allegation that items were objectively different from or worth less than the purchase price, "[t]he fact that plaintiff may have been manipulated into purchasing the items because she believed she was getting a bargain does not necessarily mean she suffered economic harm." *Mulder*, 2016 WL 393215, at *6.

Montes finally claims injury under the "price premium" or inflated demand theory: the legal theory that Montes suffered injury because the deceptive pricing

18

*Montes v. SPARC Grp. LLC*, No. 1041624

scheme inflated the market price of the leggings she bought. But her factual allegations—which we must take as true—do not support this theory.

As noted above at footnote 6 and page 14, Montes's factual assertions varied somewhat over the course of the litigation in this case. But as she herself stated in her opposition to the motion to dismiss in district court, in support of her first two theories of injury, the leggings had the monetary value that she paid for them: "the Leggings that Ms. Montes received had an actual value of between $5.00 and $6.00—the price range Aéropostale regularly offered them for sale." ER at 13 (citing complaint, para. 94).

This factual concession defeats Montes's legal "price premium" theory that Aéropostale's successful deceptive advertising scheme meant that the leggings were really worth even less than $5 or $6.

CONCLUSION

Montes received the leggings she wanted at the price for which they were offered. She certainly alleges that Aéropostale used a false and deceptive advertising scheme that had the capacity to deceive the public. And she certainly identifies a problem that might be addressed in a different legal claim. *Mandatory Poster Agency, Inc.*, 199 Wn. App. at 518; RCW 19.86.080 (attorney general need not prove causation or injury when prosecuting CPA violation).

19

*Montes v. SPARC Grp. LLC*, No. 1041624

But the federal court did not ask us about a different legal claim. It asked whether a consumer who alleges she purchased a product at its advertised price because of a misrepresentation about the product's discounted price, comparative price, or price history has alleged that she suffered a cognizable CPA injury, that is, an injury in her business or property. The answer is no. She has not alleged a cognizable CPA injury in her business or property because she does not allege an objective economic loss.

_____

Gordon McCloud, J.

WE CONCUR:

_____                  _____
Johnson, J.                                        Whitener, J.

_____                  _____
Madsen, J.                                          Mungia, J.

                                                             _____
_____                        Yu, J.P.T.

*Montes v. SPARC Group LLC*

No. 104162-4

STEPHENS, C.J. (dissenting)—The certified question asks whether a consumer who purchases a product because of a misrepresentation regarding the product's price history could plead a cognizable injury under the Consumer Protection Act (CPA), ch. 19.86 RCW. The majority answers no, holding that such a consumer suffers no injury so long as they receive goods with the same "objective value" as those advertised. This reading departs from the long-standing liberal construction of injury within the meaning of the CPA by limiting its reach solely to quantifiable economic injuries. I would answer the question posed by the U.S. Court of Appeals for the Ninth Circuit in the affirmative. Based on the facts alleged, Montes could establish a cognizable injury to her business or property because she would not have purchased the product—a pair of leggings—if Aéropostale had not misrepresented its price history. Further, she could establish injury through a "price premium" theory by proving that the deceptive or misleading price history artificially increased demand for the leggings, causing an increase in the product's market price. The Ninth Circuit does not ask us whether Montes will prevail in her

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

CPA claim, specifically whether she can quantify and prove damages. The majority imports a requirement for such proof into its injury analysis and in doing so narrows the scope of cognizable injuries under the CPA. I respectfully dissent.

## ANALYSIS

The legislature enacted the CPA to "'protect the public and foster fair and honest competition,'" instructing that the statute be "'liberally construed [so] that its beneficial purposes may be served.'" *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (quoting RCW 19.86.920). To achieve these ends, the CPA prohibits deceptive acts or practices occurring in trade or commerce. RCW 19.86.020. A person bringing a claim under the CPA must establish the following elements: "'(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013) (alteration in original) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). There is no dispute in this case that Aéropostale's advertising practices were unfair and deceptive, that they occurred in trade or commerce, and that there is a public interest impact. There is also no dispute that Montes would not have purchased the leggings if Aéropostale had not misrepresented the product's price history.

2

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

Once a plaintiff has established a CPA claim, they may then seek a range of remedies. They may bring an action to "enjoin further violations, to recover the actual damages sustained by [them], or both," and they may also recover costs and reasonable attorney fees. RCW 19.86.090. The CPA additionally authorizes treble damages in certain circumstances, limited to a maximum of $25,000 per violation. *Id.* In authorizing private actions for violations of the CPA, the legislature granted courts broad discretion to fashion appropriate remedies for each violation. *See, e.g., Allen v. Am. Land Rsch.*, 95 Wn.2d 841, 852, 631 P.2d 930 (1981) (recognizing that the legislature intended "broadened private remedies under the Consumer Protection Act" and affirming a superior court's equitable authority to impose an appropriate remedy). We have never required that a plaintiff prove monetary damages to prevail in a CPA action and have repeatedly affirmed that "unquantifiable damages may suffice." *Panag*, 166 Wn.2d at 58. Recovery for unquantifiable damages is available in part because the CPA authorizes a broad range of equitable remedies upon a showing of injury. *Id.* ("Injury is distinct from damages." (internal quotation marks omitted)).

We accepted review of this case by way of a certified question from the Ninth Circuit.[1] We review certified questions de novo and "'consider the legal issues not

---

[1] The Ninth Circuit certified the following question: "When a seller advertises a product's price, coupled with a misrepresentation about the product's discounted price, comparative price, or price history, does a consumer who purchases the product because of the misrepresentation suffer an

3

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

in the abstract but based on the certified record provided by the federal court.'"

*Greenberg v. Amazon.com, Inc.*, 3 Wn.3d 434, 439, 553 P.3d 626 (2024) (quoting

*Carlsen v. Glob. Client Sols., LLC*, 171 Wn.2d 486, 493, 256 P.3d 321 (2011)). I

agree with the majority's recitation of the factual and procedural history of this case

and do not repeat it here. As we have noted, "Context matters in answering these

certified questions." *Id.* at 441. The context of this appeal stems from a district

court's rejection of all of Montes's theories of injury, resulting in an order granting

Aéropostale's Fed. R. Civ. P. 12(b)(6) motion to dismiss. In this context, we accept

the complaint's factual allegations as true and afford no deference to the district

court's decision. *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215,

1220 (9th Cir. 2023).

I.      *"Injury to business or property" encompasses a broader set of harms than pure "economic loss"*

The central question before us is whether an unfair or deceptive act that

induces an individual to buy an item that they otherwise would not have purchased

constitutes an injury to business or property. Answering this question does not

---

'injur[y] in his or her business or property' under Wash. Rev. Code §§ 19.86.020 and 19.86.090 if the consumer pays the advertised price?" Ord. Certifying Question at 5 (May 9, 2025) (alteration in original). The Ninth Circuit also summarized each of Montes's theories of injury and invited us to "discuss the viability of these theories under Washington law in the false discounting context to the extent it sees fit." *Id.* at 5 n.2.

4

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

require that we determine the value of the item that Montes ultimately received but that we analyze whether Aéropostale's misrepresentation diminished her business or property interests. The majority holds that "the CPA excludes noneconomic injuries like 'personal injury, mental distress, embarrassment, and inconvenience.'" Majority at 11 (internal quotation marks omitted) (quoting *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431, 334 P.3d 529 (2014)). I agree, insofar as personal injury, mental distress, embarrassment, and inconvenience are not injuries to business or property. However, it does not follow that the CPA precludes recovery for all noneconomic injuries, as such injuries to business or property may be noneconomic or unquantifiable. By announcing a blanket exclusion, the majority departs from our long-standing approach to injury under the CPA and effectively rewrites the phrase "injury to business or property" to require that a plaintiff demonstrate "economic loss."

Our long-standing liberal construction of the CPA makes clear that the legislature intended to define "injury" broadly. While certain categories of injury fall outside the CPA's scope, it is because they do not harm an individual's business or property, not because they are "minimal and temporary," unquantifiable, or strictly noneconomic. *Frias*, 181 Wn.2d at 431; *see also Hangman Ridge*, 105 Wn.2d at 792 ("The injury involved need not be great, but it must be established."). Moreover, because the CPA does not define "business or property," we have

5

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

recognized that its scope encompasses a broader set of harms than just monetary losses. *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990) ("The fact that the Act allows for injunctive relief bolsters the conclusion that injury without specific monetary damages will suffice."). The CPA provides recovery for harm to both business and property, with the latter being "especially broad," including for instance, depriving an individual of the use and enjoyment of property for even a short period. *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 180, 159 P.3d 10 (2007), *aff'd sub nom.*, *Panag*, 166 Wn.2d 27; *see also Klem*, 176 Wn.2d at 795 (holding that the plaintiff suffered a cognizable injury when a defendant's unlawfully predated notarization deprived the plaintiff of seven days of property use prior to likely foreclosure because the defendant eliminated the possible chance for the plaintiff to close a sale with a private buyer during that period).

Certainly, pecuniary harm to business or property is a common example of a CPA injury, but economic losses are merely sufficient—not necessary—conditions to pleading a cognizable injury. Recognizing that CPA injury encompasses more than monetary loss reflects the fact that the statute uses the term "injury" and not "damages." *Mason*, 114 Wn.2d at 854. Accordingly, we have held that "nonquantifiable injuries, such as loss of goodwill[,] would suffice" under the fourth element even though a claimant may not be able to demonstrate actual damages. *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740, 733 P.2d 208 (1987); *see also*

6

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

*Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 316, 858 P.2d 1054 (1993) (holding that impairment of an individual's professional reputation represents a cognizable injury under the CPA). By requiring proof of "economic losses," the majority effectively creates an additional element that would preclude Montes's cause of action. Relevant here, an economic injury requirement overlooks that diminution of a plaintiff's business or property interest may be difficult to quantify or may be purely nonmonetary.

In adding a requirement for proof of economic injury, the majority's analysis misfocuses on the perceived intrinsic value of the product that Montes ultimately received as the measure of any injury. The majority reasons that Montes was not harmed because "she obtained leggings that conformed in all material respects to $6.00 leggings." Majority at 2. Thus, because Montes failed to allege that "the product she received was objectively different from or less valuable than what was advertised," she merely suffered "disappointed expectations." *Id.* at 2-3. This characterization misunderstands the injury Montes suffered. It is true that the CPA excludes disappointed expectations as a cognizable injury, but it does so for the same reason it excludes personal injury, mental distress, embarrassment, and mere inconvenience. These categories of injuries are personal, and they fail to allege any diminution of business or property interests. *Fisons*, 122 Wn.2d at 318 ("[H]ad our Legislature intended to include actions for personal injury within the coverage of the

7

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

CPA, it would have used a less restrictive phrase than injured in his or her 'business or property'."). Such injuries are not excluded because they are noneconomic or difficult to quantify—indeed, personal injuries are often readily capable of monetary valuation. Instead, the CPA's purpose is to provide redress for injury to business or property, not to "give personal injury claimants 'backdoor access' to compensation from a tortfeasor." *Peoples v. United Servs. Auto. Ass'n*, 194 Wn.2d 771, 780, 452 P.3d 1218 (2019) (quoting *Ambach v. French*, 167 Wn.2d 167, 179 n.6, 216 P.3d 405 (2009)); *see also Frias*, 181 Wn.2d at 432 (denying recovery for "emotional distress and associated physical symptoms" but permitting recovery under the CPA for other "sufficient, but not necessary," injuries such as a temporary loss of title). The distinction between personal injury and injury to business or property does not support denying recovery here. Montes alleges that Aéropostale's deceptive advertising practices were the sole reason she purchased the leggings and that Aéropostale's practices artificially drove up the price of the leggings for all consumers. As explained next, this constitutes injury to a property interest.

II. *Montes alleges a cognizable injury because Aéropostale's deceptive advertising practices diminished her property interest*

Montes advances three theories to demonstrate that she has suffered a cognizable injury to her business or property interests. The certified question

8

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

primarily asks whether the "purchase price" theory is cognizable under the CPA and then proceeds to outline each of the plaintiff's theories of injury so that we "may discuss the viability of these theories under Washington law in the false discounting context" as we see fit. Ord. Certifying Question at 5 n.2 (May 9, 2025). Like the district court, I believe there is overlap among Montes's theories and conclude that she essentially "alleges two theories of injury: that she was misled into purchasing something of value and that she incurred a price premium injury, i.e. charging a higher price for products than it otherwise could have." Excerpts of Rec. (ER) at 9 (Ord. Granting Mot. to Dismiss at 6). I therefore analyze the "benefit of the bargain" theory and the "purchase price" theory together because they allege the same underlying harm, and I would hold that Montes can state a CPA claim under these theories.

   *A. Unlawfully inducing a purchase can constitute an injury under the CPA whether described as a "benefit of the bargain" or "purchase price" theory*

Under her "purchase price" theory, Montes alleges that she "would not have otherwise purchased [the leggings] but for [the defendant]'s misrepresentations." Pl.-Appellant's Opening Br. at 24. Similarly, under the "benefit of the bargain" theory, Montes alleges that she was injured because she did not receive leggings that

9

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

had actually been discounted from $12.50 to $6.00. Montes argues that her loss under the "benefit of the bargain" theory is "the difference between the item's actual value and what its value is represented to be." *Id.* at 41 (underlining omitted). This, however, more accurately reflects an assessment of the damages resulting from the injury to her property interest. More precisely understood, her *injury* under both theories is that she paid money she otherwise would not have because of a representation about the product's price history.

Before today, we had never squarely examined the unlawful inducement theories of injury that Montes presents, but the principle underlying them finds support in our precedent. In *Panag*, we recognized that "'[a] person whose property is diminished by a payment of money wrongfully induced is injured in his property.'" 166 Wn.2d at 64 (internal quotation marks omitted) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 340, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979)). The plaintiff in *Panag* was unlawfully induced to pay money on an alleged debt, and, in resolving that case, we did not need to decide whether the payment itself, regardless of the validity of the debt, would also constitute an injury under the CPA. We recognized, however, the potential viability of such a theory of injury. *See, e.g.*, *Blair v. Nw. Tr. Servs., Inc.*, 193 Wn. App. 18, 36, 372 P.3d 127 (2016) (collecting injury cases and noting that "an 'injury' can be based on unlawful collection practices even where there is no dispute as to the validity of the underlying debt").

10

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

In *Young v. Toyota Motor Sales, U.S.A.*, the plaintiff advanced an inducement theory and we examined whether he proved the causal link between the defendant's affirmative misrepresentation that a truck included a temperature gauge and his decision to purchase the truck. 196 Wn.2d 310, 320, 472 P.3d 990 (2020). Citing *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 83, 170 P.3d 10 (2007), we affirmed the principle that a plaintiff need not show actual reliance on a misrepresentation to demonstrate causation. *Young*, 196 Wn.2d at 321. We nonetheless rejected the plaintiff's CPA claim on its facts, concluding that "Reliance was Young's theory, and he failed to prove it." *Id.* at 322. Contrary to the majority's characterization of our decision,[2] we did not reject any unlawful inducement theory of injury, instead, holding that Young failed to show that Toyota's misrepresentation caused him to do anything differently. *Id.* at 321 (noting Young's failure to establish a causal link between the misrepresentation and his purchase decision "is fatal to [his] particular CPA claim") This case highlights the interplay between injury and causation; while a plaintiff must demonstrate each

---

[2] The majority characterizes the trial court in *Young* as finding no cognizable injury "because the misrepresentation had no economic impact and did not cause him any injury." Majority at 17. The trial court, however, focused on inducement, not injury, and found that "Mr. Young failed to demonstrate that Toyota's mistake induced him to buy his vehicle." *Young v. Toyota Motor Sales, U.S.A.*, 2018 WL 8805371, at *1 (Spokane County Super. Ct., Wash. Jan. 5, 2018). It also found that his claim was "much more consistent with someone who learned that Toyota had made a mistake and wanted to take advantage of it, than someone who relied upon that item in good faith, and then did very little until Toyota actually admitted their error." *Young v. Toyota Motor Sales, U.S.A.*, 2017 WL 11318725, at *14 (Spokane County Super. Ct., Wash. Nov. 1, 2017). In affirming dismissal, our decision relied on these findings.

of the required elements of a CPA claim, these elements "should not be read in isolation so as to render absurd conclusions." *Ambach*, 167 Wn.2d at 178.

Here, in contrast to *Young*, we are not concerned with whether Montes has proven her allegations or established causation. Taking the allegations in the complaint as true, Montes would not have spent $6 on this pair of leggings if she had known the product's true price history.[3] To view this as a pure causation question would "render absurd conclusions" because it is Aéropostale's affirmative misrepresentation that led Montes to purchase the leggings, and it is the purchase itself that constitutes a cognizable injury in these circumstances. *Id.* Stated differently, Montes's property interest was diminished because Aéropostale's misrepresentation prevented her from, for instance, spending $6 elsewhere on another item; she is not required to prove that the leggings are not worth $6.[4] By

---

[3] The Ninth Circuit presumes the truth of this factual allegation in its certified question, asking whether "a consumer who purchases the product because of the misrepresentation suffer[s] an 'injur[y] in his or her business or property.'" Ord. Certifying Question at 5 (second alteration in original). The district court similarly accepted all allegations of material fact as true when it granted Aéropostale's motion to dismiss. ER at 5 (Ord. Granting Mot. to Dismiss at 2). However, after accepting that Montes would not have purchased the leggings absent Aéropostale's misrepresentation, the district court incorrectly concluded that Montes's claim fails as a matter of law because she did not allege that the leggings "were different and/or less than what was advertised." *Id.* at 8 (Ord. Granting Mot. to Dismiss at 5-6). The majority makes the same mistake. As explained in the main text, this is not an element of proof under the CPA.

[4] While not squarely presented in this case, Aéropostale's deceptive advertising practices could also risk distorting the competitive marketplace for leggings. If competitors sell $6 leggings without deceptively marking them as discounted, it is possible that such competitors are at a competitive disadvantage and preventing Aéropostale's practices accords with the CPA's purpose to "foster fair and honest competition." RCW 19.86.920.

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

concluding that Montes alleges nothing more than "dashed expectations," the majority's interpretation of the CPA would allow deceptive or misleading advertising to induce consumers to part with their money so long as the goods generally function as advertised. This erroneously narrows the CPA.

Faced with a similar issue of first impression, the Oregon Supreme Court recently analyzed its Unfair Trade Practices Act and recognized that "[a]t its essence, the purchase price theory is that one person has been induced by another person's unlawful activities to pay money for something that the first person would not otherwise have bought." *Clark v. Eddie Bauer LLC*, 371 Or. 177, 194, 532 P.3d 880 (2023). Under this theory, it is irrelevant whether the leggings Montes received were actually "worth less than the purchase price." Majority at 18. Much like the plaintiff in Oregon, Montes alleged that she received "merchandise that had never been offered for sale at those prices" and that because of the representations regarding price history, she "paid money to defendants for articles of clothing that she would not have bought had she known their true price history." *Clark*, 371 Or. at 194. The Oregon Supreme Court's reasoning is persuasive because it accords with our approach to the CPA's injury prong. Specifically, it centers the injury analysis on the diminution of a property interest—deceptively inducing a person to spend money they would not otherwise have spent—not on a putative objective value of the purchased item. I would hold that Montes's "purchase price" and "benefit of the

13

bargain" theories of injury state viable claims under the CPA. I turn next to consideration of her "price premium" theory of injury.

> *B. Artificially inflating demand for an item by misrepresenting its price history can constitute an injury under the CPA*

In addition to the "benefit of the bargain" and "purchase price" theories, Montes alleges a "price premium" theory of injury. Under this theory, Montes alleges that she paid a premium for the leggings because Aéropostale's misrepresentations about its price history artificially increased demand for the leggings, leading to an increase in the product's market price. Aéropostale's market manipulation, she alleges, effectively led every consumer, including Montes, to pay a higher price than they otherwise would have for the leggings.

Accepting the factual allegations as true, Montes's "price premium" theory is a viable theory of injury under the CPA. We are not asked to decide whether Aéropostale's misrepresentations in fact shifted the demand curve and increased the price Montes and other consumers paid for these leggings. We have long recognized that if a plaintiff's purchasing power is diminished because of the defendant's unfair or deceptive act, this can constitute a cognizable injury under the CPA. *Panag*, 166 Wn.2d at 57; *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 837, 355 P.3d 1100 (2015) (holding that the plaintiff suffered a cognizable injury because they incurred

"investigation expenses and other costs associated with dispelling the uncertainty" brought upon by the defendant's deceptive acts); *Greenberg*, 3 Wn.3d at 461 (finding that plaintiffs "suffered monetary harm . . . [because] [t]hey each paid higher prices on consumer goods and food items than they otherwise would have" absent Amazon's unlawful pricing practices). The amicus brief filed by the Washington attorney general notes, "Advertised reference prices are not emotional or subjective; they are quintessentially objective market signals." Br. of Amicus Curiae Att'y Gen. of State of Wash. at 11. This aligns with our understanding of injuries to business or property under the CPA, which encompass Montes's allegation that Aéropostale's deceptive market signals caused an increase in demand and a commensurate increase in price. If Montes can demonstrate that Aéropostale's practices inflated the price she paid for these leggings, then she has suffered a cognizable injury under the CPA. I would recognize the validity of her "price premium" theory.

## CONCLUSION

The majority concludes that Montes "received the leggings she wanted at the price for which they were offered," majority at 19, effectively holding that Montes got a fair deal and would have purchased the leggings regardless of Aéropostale's misrepresentation. I believe that such a "dashed expectations" characterization of Montes's claims reflects an overly narrow view of "injury" under the CPA and

15

*Montes v. SPARC Group LLC*, No. 104162-4
(Stephens, C.J., dissenting)

suggests factual findings that are not ours to make, and the rule that follows the
majority's holding risks excluding all noneconomic or unquantifiable injuries to
business or property from the CPA's expansive remedy provisions. Such a result
departs from our long-standing approach to analyzing injury under the CPA. I would
hold that Montes has pleaded a cognizable injury to her property interests under both
her "benefit of the bargain" and "purchase price" theories as well as her "price
premium" theory. Accordingly, I respectfully dissent.

Stephens, C.J.

González, J.

Montoya-Lewis, J.

16